[Crim. No. 5200. In Bank. July 27, 1951.]

THE PEOPLE, Respondent, v. STANLEY BUCKOWSKI, Appellant.

Morris Lavine for Appellant.

Edmund G. Brown, Attorney General, and Frank Richards, Deputy Attorney General, for Respondent.

SHENK, J.—Stanley Buckowski and his wife were charged with the murder of Helen J. Edmunds on February 1, 1950. Each pleaded not guilty and waived a jury trial. They were jointly tried. The wife was acquitted but Stanley was found guilty of first degree murder and sentenced to death. A motion for a new trial made on all the grounds contained in Penal Code, section 1181, was denied. This is an automatic appeal under Penal Code, section 1239(b).

Helen J. Edmunds was approximately 80 years of age and lived alone in the city of Los Angeles. On the evening of February 1, 1950, a neighbor heard a sound like a gunshot followed by moaning. The following afternoon neighbors entered Mrs. Edmunds' home and found her lifeless body on the bed. The rear screen door had been slashed in one corner; the glass panel of a second door was scratched and broken; telephone wires leading to the house had been cut; a living room desk had been ransacked. The autopsy surgeon testified that death was due to a gunshot wound.

Officers later found several guns in an apartment rented by the Buckowskis. A ballistics expert testified that one of

these guns had fired the bullet which killed the deceased. A fingerprint expert testified that a palm print found on broken window glass at the home of the deceased was that of Stanley Buckowski.

The defendant testified that he had acquired the alleged lethal weapon over a month after the slaying while committing a burglary and that he had never been in the home of the deceased until taken there by police investigators. He declared that he had committed burglaries too numerous to mention but that it was never his practice to cut telephone wires, to break windows, or to ransack but a single desk. He testified that he felt that if he had the opportunity he could disprove all the evidence produced, but added that in view of the fact that his wife had told officers that he left her outside while he entered the home of the deceased he could only say that if he had committed the crime he did not remember it.

██ Prejudicial error is asserted in the denial of the defendant's request for a continuance to secure a private investigator's assistance to establish the particular burglary in which he believed he had acquired the lethal weapon. The prosecution had offered to inform him as to the burglary date if he would otherwise describe the particulars, but he refused to give details. He offers no explanation as to why in the exercise of due diligence he could not have obtained the information prior to the trial. ██ The granting of a continuance normally rests in the discretion of the trial court. (*People* v. *Collins,* 195 Cal. 325 [233 P. 97].) ██ No abuse of discretion appears.

The defendant contends that the evidence is insufficient to justify the verdict. He claims that according to the testimony of the ballistics expert the gun alleged to have been used marked each bullet fired in a different location. ██ The same expert, however, testified that these markings were identical with those found on the fatal bullet and that that bullet had been fired by the gun found in the Buckowskis' apartment. The defendant argues that because photographic enlargements of the bullets compared by the ballistics expert were not introduced the presumption of Code of Civil Procedure section 1963(6) arises to the effect that higher evidence would be adverse where inferior evidence is produced. No more direct evidence of the conclusions of the ballistics expert was necessary than his oral testimony in connection with the bullets themselves.

There is testimony by an expert that palm prints are

as reliable as fingerprints. This view is in accord with that expressed in *State* v. *Kuhl*, 42 Nev. 185 [175 P. 190, 3 A.L.R. 1694]. The defendant calls attention to certain dissimilarities between the palm print found at the scene of the crime and the defendant's palm print. The expert testified that 10 points of identity are conclusive evidence of identity and that he had found 26 such points. He stated that while dissimilarities had been considered in reaching his conclusion, differences in prints may be attributed to such factors as the presence of foreign matter and the slipping of the finger or palm. No testimony disputing that of the expert was offered.

The defendant charges error in the admission of evidence to explain why certain scars on the palm of his hand could not have appeared on the print found at the scene of the crime. The testimony disclosed that the scars had developed as a result of a burglary committed subsequent to the time of the murder. The defendant contends that this evidence was irrelevant since the scarred portion of the palm was not included in the print found in the deceased's home. He argues that he was prejudiced by this revelation of the commission of another crime. Prejudice is not shown in view of the defendant's own testimony that he was a professional burglar.

The defendant objected to the admission in evidence of a wire recording of statements made by his wife prior to the trial. The recording was not admitted as to the defendant husband to prove the truth of the statements there made but as an accusatory statement in the light of which the defendant's conduct was probative. When sentencing the defendant the trial judge, who was here the trier of fact, stated that even if the recording and the defendant's reaction to it had not been admitted he would still conclude that the defendant's guilt had been conclusively established.

The defendant argues that evidence of his conduct and statements to investigating officers in the face of various accusatory statements should not have been admitted. This evidence was proper as an exception to the hearsay rule. The conduct of the defendant in the presence of the officers was sufficiently equivocal to permit its reception on the theory that it was not merely a denial or a refusal to talk. At times he remained silent. Occasionally his reply consisted of a declaration that he did not remember. In the light of other evidence none of these alleged errors in the admission of evidence would warrant a reversal.

The defendant contends that he was denied due process in that certain of his statements received in evidence resulted from duress. These statements were made during questioning by officers in which the defendant indicated that he was hungry, complained of a delay previously experienced in seeing an attorney, and he expressed the belief that he would not get a "fair deal." He made no attempt at the trial to offer evidence indicating duress. A witness who transcribed his statements testified as to their free and voluntary nature. Some of them were secured during an automobile ride with the officers. ▮ The defendant claims that his removal from jail for the purpose of this trip was not authorized under the provisions of Penal Code, section 4004. Any failure to comply with this statutory requirement does not of itself constitute evidence of duress.

▮ The defendant contends that since there was no evidence that any property had been removed from the house it cannot be said that the person entering the house did so in the course of a burglary, and that the evidence was therefore insufficient to establish murder of the first degree. The conclusion that the homicide was committed in the perpetration of burglary could be reasonably drawn from the circumstances of the crime and the defendant's own admissions. The expert testimony sufficiently connected the defendant with the commission of the crime. The evidence was therefore sufficient to support the verdict.

The judgment and order are affirmed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.