[No. B046470. Second Dist., Div. Three. Oct. 31, 1990]

THE PEOPLE, Plaintiff and Appellant, v.
EDGAR VERNON WEST, Defendant and Respondent.

**COUNSEL**

Ira Reiner, District Attorney, Harry B. Sondheim and Martha E. Bellinger, Deputy District Attorneys, for Plaintiff and Appellant.

Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff, Cathy Gardner and Elizabeth Warner, Deputy Public Defenders, for Defendant and Respondent.

**OPINION**

**CROSKEY, J.**—The People appeal from the order setting aside an information alleging that respondent Edgar Vernon West (West) possessed cocaine and served a prior separate prison term (Health & Saf. Code, § 11350; Pen. Code, § 667.5, subd. (b)), and dismissing the action under Penal Code section 995. The trial court expressed the view that the police use of previously seized narcotics in a reverse sting operation to catch other users and dealers was in violation of relevant sections of the Health and Safety Code and that such unlawful conduct could not support a prosecution of defendants snared by such "egregious behavior." We hold that the trial court's conclusions were incorrect and that the case against West was improperly dismissed. We therefore reverse.

FACTS AND PROCEDURAL HISTORY

On January 5, 1989, just after 4:30 p.m., undercover Pasadena Police Officer Darryl Qualls (Qualls) was selling rock cocaine in a "reverse sting" operation with the Pasadena Police Department's Neighborhood Task Force. He had obtained the cocaine from a Sergeant Kirkpatrick, who retrieved it from the Pasadena Police Department evidence locker. He had "numerous pieces" of rock cocaine. The pieces were not counted when given to Qualls, but he estimated an approximate total weight of two ounces.

Qualls was selling from a laundry room located off a courtyard between two buildings on Parke Street in Pasadena. He was approached by West who asked, "You got anything?" Qualls replied, "Yeah." West said, "I need a 20." Qualls said, "Alls I got is 20's." West replied, "Okay," and gave Qualls a $20 bill in exchange for a piece of rock cocaine.[1]

As West left the laundry room, Officer Luis Banuelos (Banuelos), who was in the courtyard and observed the sale, walked behind West to arrest him. Banuelos said, "Police." In response, West threw a small object. West was arrested, but the officers could not find the cocaine that he had purchased from Qualls.

When the operation was over, Qualls gave the $20 bill to Banuelos, who took it to the property section. Qualls also returned the remaining cocaine to Sergeant Kirkpatrick.

At the conclusion of the preliminary hearing West made a motion to dismiss for insufficiency of the evidence and "in the interest of justice." The motion was denied, and West was held to answer on the charge of cocaine possession.

In the superior court, West brought a motion to set aside the information pursuant to Penal Code section 995. He argued in the moving papers that the evidence was insufficient and that the commitment by the magistrate was unlawful. At the hearing, the trial court found that the Pasadena Police Department's reverse sting operation was in violation of Health and Safety Code sections 11474 and 11474.5. The court stated[2] that there is "no other

---

[1] Qualls, an experienced narcotics officer, explained that "a 20" is a street term for a "20 dollar increment of cocaine."

[2] In making these statements, the trial court relied upon *People* v. *Backus* (1979) 23 Cal.3d 360, 384 [152 Cal.Rptr. 710, 590 P.2d 837]. At the time *Backus* was decided, Health and Safety Code sections 11474 and 11474.5 were in effect. Those sections were similar to the current statutes, Health and Safety Code sections 11473 and 11473.5, except that the prior sections required that the contraband be turned over to the Attorney General for destruction or

legislative directive regarding controlled substances, this being the sole directive and the Pasadena Police Department had no right to have those things in their possession for any purpose. Therefore, their conduct was illegal. That kind of behavior is the kind of egregious behavior which is a threat, I believe, to the integrity of the justice system because, in addition to that, I think, as indicated in this very transcript, there are no controls on the use of this material." The court continued, "There is also the point in this case that the defendant was not permitted to exercise unchallenged dominion and control over the object so as to actually have possession of it." The court then granted West's motion and dismissed the case.

### APPELLANT'S CONTENTIONS

The People contend that the Penal Code section 995 dismissal was erroneous because West's substantial rights were not violated; and that West was properly committed, on the basis of reasonable and probable cause.[3]

### DISCUSSION

1. *There Was No Violation of West's Substantial Rights.*

 a. The Penal Code Section 995 Motion Was Appropriate Procedure to Challenge Legality of Prosecution

The Legislature has provided numerous basic safeguards to assure criminal defendants a "fair trial" during the commitment process as well as at trial. (*People* v. *Elliot* (1960) 54 Cal.2d 498, 503 [6 Cal.Rptr. 753, 354 P.2d 225], overruled on another ground in *People* v. *Pompa-Ortiz* (1980) 27 Cal.3d 519, 529 [165 Cal.Rptr. 851, 612 P.2d 941].) These forms of procedure " 'establish a substantial right vested in every person charged with crime and should not be lightly waved aside. [Citation.]' " (54 Cal.2d at p. 503.) If the magistrate disregards substantial rights guaranteed to the defendant the resulting commitment is unlawful. (*Ibid.*) If the commitment is unlawful, the information "shall" be set aside by the court in which the defendant is arraigned pursuant to Penal Code section 995.

Substantial rights within the meaning of Penal Code section 995 have been held to include the right to counsel, to cross-examination, and to the presentation of an affirmative defense at the preliminary hearing; and substantial procedural rights include the statutory rights to complete the

---

disposition. Former Health and Safety Code sections 11474 and 11474.5 were renumbered and amended in 1980.

 [3] In light of our disposition, we need not reach the additional contentions raised by the People.

preliminary hearing in one session and to have a closed hearing. (See cases cited in *People* v. *Pompa-Ortiz, supra,* 27 Cal.3d at p. 523; *Jennings* v. *Superior Court* (1967) 66 Cal.2d 867, 874-875 [59 Cal.Rptr. 440, 428 P.2d 304].) Courts have found defendants not "legally committed:" (1) where the preliminary hearing is not conducted within 10 court days following arraignment, as required by statute (*Irving* v. *Superior Court* (1979) 93 Cal.App.3d 596 [155 Cal.Rptr. 654]; see *Landrum* v. *Superior Court* (1981) 30 Cal.3d 1, 6 [177 Cal.Rptr. 325, 634 P.2d 352]); (2) where there is a potential for bias or the appearance of a conflict of interest by the prosecution (*People* v. *Superior Court* (*Greer*) (1977) 19 Cal.3d 255, 263, fn. 5 [137 Cal.Rptr. 476, 561 P.2d 1164]); and (3) where the defendant is mentally incompetent (*Miller* v. *Superior Court* (1978) 81 Cal.App.3d 132 [146 Cal.Rptr. 253]).

■ The above cases support the People's argument that a Penal Code section 995 motion is appropriate *only* when "the integrity of the fact-finding process or the fundamental procedural structure of the preliminary hearing has been significantly affected." However, the Supreme Court has held that a Penal Code section 995 motion for dismissal is the appropriate procedure for challenging the legality of the prosecution itself. (*People* v. *McGee* (1977) 19 Cal.3d 948, 967 [140 Cal.Rptr. 657, 568 P.2d 382], quoting *Murgia* v. *Municipal Court* (1975) 15 Cal.3d 286, 293, fn. 4 [124 Cal.Rptr. 204, 540 P.2d 44].) In *McGee,* the Supreme Court held that, in a prosecution for welfare fraud, the state is required by statute to seek restitution before filing criminal charges. (19 Cal.3d at p. 961.) The court further held that a challenge to prosecution in the form of the "procedural defense created by the statute is properly resolved by the trial court" at a pretrial motion to set aside the information. (*Id.,* at p. 967.) The *Murgia* defendants alleged discriminatory prosecution. The court held that the claim should be " 'treated as an application to the court for a dismissal or quashing of the prosecution upon constitutional grounds.' [Citation.]" (15 Cal.3d at p. 293, fn. 4.) In both cases the court stated that the questions presented related " 'not to the guilt or innocence of the accused' but . . . ' "to a constitutional defect in the institution of the prosecution. [Citation.]" ' " (*People* v. *McGee, supra,* 19 Cal.3d at pp. 967-968; *Murgia* v. *Municipal Court, supra,* 15 Cal.3d at p. 293, fn. 4.)

In the context of this state of the law, West argues that his arrest and the subsequent filing of the information against him violated his right to due process. In support of this position he cites several cases, among them *United States* v. *Russell* (1973) 411 U.S. 423 [36 L.Ed.2d 366, 93 S.Ct. 1637]. The *Russell* court stated that the conduct of law enforcement agents could be "so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction [Citation]. . . ." (*Id.,* at pp. 431-432 [36 L.Ed.2d at p. 373].)

The trial court in this case found that the Pasadena police, in using seized cocaine in its reverse sting operation, was in violation of statute and, therefore, "their conduct was illegal." Thus, we find that this case presents a question of whether the methods employed by the Pasadena police in the "reverse sting" operation violated West's constitutional rights such that the institution of criminal proceedings against him was constitutionally defective.

### b. The Reverse Sting Operation Was Not in Violation of Statute

■ Our analysis of the police conduct must begin with a review of the statutes that the superior court found the Pasadena Police Department to have violated.[4] Section 11473 is part of Division 10 of the Health and Safety Code, known as the Uniform Controlled Substances Act. It falls within chapter 8, which is entitled "Seizure and Disposition." Health and Safety Code section 11473 provides, in pertinent part: "[A]ll seizures under provisions of this chapter except . . . vehicles, boats or airplanes, . . . moneys, negotiable instruments, securities, or other things of value . . . shall, upon conviction of the owner or defendant, be ordered destroyed by the court in which conviction was had." The plain meaning of those words is that, where drugs have been seized in connection with the investigation and arrest of a criminal defendant and a conviction results, the trial court is required to order the drugs destroyed after the conviction. In cases where no prosecution results, seized drugs must also be destroyed by order of the court, unless the court finds that the defendant lawfully possessed the drugs. (Health & Saf. Code, § 11473.5.)[5]

Neither statute requires or even permits the police to destroy seized drugs. Nor do the statutes contain a time frame or a triggering procedure that puts any burden on a law enforcement agency to do anything to accomplish the destruction of seized drugs.[6] Contrary to the superior court's finding that "the Pasadena Police Department had no right to have those things in their possession for any purpose," the statutory scheme leaves all such seized contraband in the hands of the seizing agency until such time as

---

[4] As noted earlier, the trial court, reading from *People* v. *Backus, supra,* 23 Cal.3d 360, cited the prior code sections, former Health and Safety Code sections 11474 and 11474.5. Obviously, we will analyze the statute in its current form.

[5] Section 11473.5 provides: "All seizures of controlled substances, instruments or paraphernalia used for unlawfully using or administering a controlled substance which are in possession of any city, county or state official as found property, or as the result of a case in which no trial was had or which has been disposed of by way of dismissal or otherwise than by conviction, shall be destroyed by order of the court, unless the court finds that the controlled substances, instruments, or paraphernalia were lawfully possessed by the defendant."

[6] Penal Code section 1417.6 requires that narcotics that are "introduced or filed as an exhibit" at trial "shall be, by order of the trial court, destroyed or otherwise disposed of under the conditions provided in the order no sooner than 60 days following the final determination of the criminal action or proceeding."

the contraband is ordered destroyed by a trial court.[7] We find no basis in the statutes themselves to uphold the trial court's ruling that the conduct of the Pasadena Police Department was illegal.

### c. The Reverse Sting Operation Did Not Violate *Backus*

We turn next to the *Backus* case. The trial court relied heavily on its language and concluded that *Backus* "frowns upon" the reverse sting operation employed by the officers who arrested West. *Backus* involved the prosecution of two detectives and a sergeant in the Salinas Police Department for furnishing heroin to police informants for the informants' personal use. The charges were dismissed in superior court, in part on the ground that the defendants were "in the performance of their official duties" under Health and Safety Code section 11367. (23 Cal.3d at p. 368 and fn. 5.) The Supreme Court held that section 11367 immunity "reflects a legislative recognition that the investigation of suspected narcotics violations often necessitates the employment of undercover agents and persons secretly working under their direction who must pose as addicts, users, or sellers, and in so doing may be required to commit acts which would otherwise violate division 10 [of the Health and Safety Code] by possessing, furnishing, selling, or transporting controlled substances." (*Id.*, at p. 382, fn. omitted.) The *Backus* opinion very clearly reads the immunity section of the Health and Safety Code to permit, if not encourage, the type of undercover police work engaged in by the officers who arrested West.

For preliminary hearing purposes, it was established in *Backus* that, at least with respect to one of their informants, the defendants had given him heroin that they said had been seized in connection with the *arrests* of other persons. (*People* v. *Backus, supra,* 23 Cal.3d at pp. 383-384.) That gave rise to the discussion of former Health and Safety Code sections 11474 and 11474.5. The court held that those sections "mandate the disposition of controlled substances seized by peace officers" and that the defendants, individual police officers, "had no authority to otherwise dispose of any heroin seized from a person against whom charges related to possession of the heroin were contemplated or filed." (*Id.*, at p. 384.) The court

---

[7] It appears from the record that the trial court's finding is based on an erroneous reading of the former code section. Under those sections, seized drugs would have to be turned over to the Attorney General for destruction by order of the court, as stated in *Backus.* (23 Cal.3d at p. 384.) After reading that language from the *Backus* opinion, the trial court stated, "There is no other legislative directive regarding controlled substances, this being the sole directive and the Pasadena Police Department had no right to have those things in their possession for any purpose." It appears that the trial court read the statutes quoted in *Backus* to require that the police had to turn over to the Attorney General seized drugs that would no longer be used as evidence. Even under the former statutes, however, a court order was required, as noted in a footnote in the *Backus* opinion. (23 Cal.3d at p. 384, fn. 14.)

continued: "Nor could they claim to reasonably believe that any part of such seized evidence could be diverted to their investigatory activities. Due process requires that criminal defendants have an opportunity to examine, and in appropriate cases have chemical tests performed on, evidence to be offered against them." (*Ibid*. Citation and fn. omitted.) It is clear that the court was concerned that evidence in a pending case was being used, and thereby destroyed.

■ There was no showing at all in this case that the cocaine that was being sold by the undercover officers was connected to a pending case. Even if it were, there is a distinction between the use being made of the seized drugs in *Backus* and the use at issue here. In *Backus,* the drugs were taken with the intent that they would be given to heroin users for their consumption and, obviously, they would not be returned to the evidence locker. In the Pasadena Police Department's reverse sting operation, there was no intent to destroy the drugs. Indeed, the purpose of the operation was to arrest the buyer with the drugs just purchased from the undercover officer. Such dangerous but necessary police work does not violate the statutory intent described in the *Backus* interpretation of former Health and Safety Code sections 11474 and 11474.5, which we find would apply equally to the current Health and Safety Code sections, 11473 and 11473.5: "The legislative intent [is] that controlled substances seized by peace officers not be dissipated or find their way back into the hands of persons not authorized to possess them . . . ." (23 Cal.3d at p. 385.)[8]

### d. The Police Conduct Did Not Raise a "Due Process" Defense

■ West argues vigorously that the police conduct in this case was "outrageous." The "due process" defense that West is attempting to assert could be characterized as police behavior that is even beyond entrapment.

---

[8] We note that in this particular case the $20 rock that was allegedly sold to West by Qualls was not recovered. This incident was not the result intended by the police activity, but was accidental. We do not find the failure to recover the cocaine in this case to be a basis on which to find the use of seized drugs by a police department to make arrests "illegal" or "outrageous" police conduct.

Nevertheless, we are constrained to express our deep concern about the methods employed by the Pasadena Police Department in accounting for the drugs that were used in this operation and no doubt in other undercover work. (See, e.g., *People* v. *Wesley, ante,* p. 1130 [274 Cal.Rptr. 326].) Which is to say, there seem to be no methods. According to the testimony given by Qualls, no counting or weighing of the rocks of cocaine was done either when he took the drugs out of the evidence locker or when he returned them. Even if such a total lack of accountability causes no problems in 99 percent of the cases, the department has a responsibility to make sure that, even in the remaining one percent, all the cocaine that was borrowed for the undercover work is returned. We do not mean to cast any doubt on Qualls or his partner. However, the reality is that having no checks on what goes in and out of the evidence room encourages the weak and enables the dishonest. We strongly suggest the implementation of appropriate accountability procedures.

(See *United States* v. *Russell, supra,* 411 U.S. at pp. 428-432 [36 L.Ed.2d at pp. 371-374].) Analyzing police conduct in an entrapment case, our state supreme court has said: "Although the determination of what police conduct is impermissible must to some extent proceed on an ad hoc basis, guidance will generally be found in the application of one or both of two principles. First, if the actions of the law enforcement agent would generate in a normally law-abiding person a motive for the crime other than ordinary criminal intent, entrapment [would] be established. . . . Second, affirmative police conduct that would make commission of the crime unusually attractive to a normally law-abiding person will likewise constitute entrapment." (*People* v. *Barraza* (1979) 23 Cal.3d 675, 690 [153 Cal.Rptr. 459, 591 P.2d 947].)

Under the facts of this case as established at the preliminary hearing, West approached Qualls and inquired about what was for sale. Under *Barraza,* West would not even be able to establish an entrapment defense, much less the defense based on due process protection against outrageous police conduct that he asserts. We certainly find no ground in this argument for affirming the trial court's order of dismissal.

### 2. *West's Commitment was Proper*

██ Penal Code section 995 provides an additional ground for dismissal: the commitment of the defendant "without reasonable or probable cause." Reasonable or probable cause is "such a state of facts as would lead a [person] of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused. [Citation.]" (*People* v. *Uhlemann* (1973) 9 Cal.3d 662, 667 [108 Cal.Rptr. 657, 511 P.2d 609].) The burden of proof on the prosecution before the magistrate is quite distinct from that which must be met to obtain a conviction before a judge or jury. (*People* v. *Slaughter* (1984) 35 Cal.3d 629, 637 [200 Cal.Rptr. 448, 677 P.2d 854].) An information will not be set aside if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it. (*Ibid.,* and cases cited there.)

█▐██ West is charged with violating Health and Safety Code section 11350, cocaine possession.[9] The elements of that offense are: actual

---

[9] At the preliminary hearing Qualls gave his opinion that the rock he allegedly sold to West was cocaine. As the foundation for his opinion, he testified to his education, training and experience in the identification of rock cocaine. West challenges Qualls's qualifications and contends that his nonexpert opinion was insufficient as a matter of law to prove that the item was cocaine. He further contends that it is "not significant" that the evidence was presented at a preliminary hearing rather than at trial. But, it is, of course. The opinion given by Qualls, who testified that he had seen and touched rock cocaine at least 500 times, was sufficient to establish that the rock was cocaine. (*People* v. *Rede* (1986) 176 Cal.App.3d 1005, 1007 [222

or constructive possession with knowledge of the presence of the drug and its narcotic character. (*People* v. *White* (1969) 71 Cal.2d 80, 82 [75 Cal.Rptr. 208, 450 P.2d 600]; *People* v. *Rice* (1976) 59 Cal.App.3d 998, 1002 [131 Cal.Rptr. 330].) The elements may be established by circumstantial evidence and any reasonable inference drawn from such evidence. (*People* v. *White, supra,* 71 Cal.2d at p. 83; *People* v. *Rice, supra,* 59 Cal.App.3d at p. 1003.)

There is little doubt that the evidence that was before the magistrate in this case meets the test of reasonable or probable cause. That evidence demonstrates that West asked for and then purchased a rock of cocaine from Qualls and walked away with it.

■ The trial court found that West "was not permitted to exercise unchallenged dominion and control over the object so as to actually have possession of it." For preliminary hearing purposes, the evidence established that West had possession when he accepted the rock from Qualls. It is immaterial that he threw the cocaine away just before he was to be arrested. (See, e.g., *People* v. *Berti* (1960) 178 Cal.App.2d 872, 875 [3 Cal.Rptr. 514]; *People* v. *Ramirez* (1951) 104 Cal.App.2d 710 [232 P.2d 31]. Cf. *People* v. *Mijares* (1971) 6 Cal.3d 415, 422 [99 Cal.Rptr. 139, 491 P.2d 1115].)

DISPOSITION

The order is reversed.

Danielson, Acting P. J., and Hinz, J., concurred.

Respondent's petition for review by the Supreme Court was denied January 17, 1991.

---

Cal.Rptr. 555].) West's efforts to distinguish this case on the ground that in *Rede* the opinion was given by a chemist rather than a police officer is rejected.