[No. A049080. First Dist., Div. Five. Mar. 21, 1991.]

THE PEOPLE, Plaintiff and Appellant, v.
ANTHONY MARSHALL PENNINGTON, Defendant and
Respondent.

COUNSEL

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Laurence K. Sullivan and Linda James, Deputy Attorneys General, for Plaintiff and Appellant.

Steven J. Antler, under appointment by the Court of Appeal, for Defendant and Respondent.

OPINION

KING, J.—In this case we hold it was error to set aside an information solely because the defendant was represented at his preliminary hearing by a deputy public defender, who thereafter discovered for the first time that a prosecution witness had previously been represented by the public defender's office. We conclude no substantial right of the defendant was denied at the preliminary hearing, since the deputy had no knowledge that his office had a potential conflict of interest.

The People appeal from an order setting aside an information charging defendant Anthony Pennington with murder (Pen. Code, §§ 187, 189)[1] and discharging a firearm at an unoccupied vehicle (§ 247, subd. (b)). The information further alleged as a special circumstance that Pennington had intentionally killed the victim while lying in wait within the meaning of section 190.2, subdivision (a)(15). The court granted Pennington's motion to set

---

[1] All further statutory references are to the Penal Code.

aside the information after concluding Pennington had been denied a substantial right at the preliminary hearing—the right to be represented by counsel free from conflicts of interest. We reverse.

## FACTS

On November 18, 1989, the body of Tony Rivers was found near Highway 175 between Hopland and Lakeport. He died of a shotgun wound to the throat. Steven Riel, who lived at a ranch at 8411 Highway 175 owned by the victim, saw Pennington on the day of the murder on ranch property. Riel knew Pennington and his presence on the property was not unusual. Later that day, the victim and Riel noticed Pennington hiding behind a small mound of dirt watching a man cut firewood. They thought Pennington's behavior was "strange." The last time Riel saw the victim alive was when he observed him drive up the hill in an all terrain vehicle. About 30 or 40 minutes later, he heard a shot and then a series of shots.

The victim's body was first observed by Edward Scoglietti, a passerby on Highway 175 who had stopped his car to relieve himself. He thought the victim's body was a dummy or a person working on a nearby vehicle. He identified Pennington as the man he saw standing near the body. Scoglietti went looking for old beer cans and bottles across the roadway. Scoglietti testified that while he was away from his truck, Pennington shot bullet holes in the truck's tires and hood.

Pennington was arrested without incident later that day. He had a loaded .38-caliber derringer in his possession. After Pennington's arrest, an investigator informed him that a gunshot residue test would be performed on his hands. Pennington said, "You are probably going to find something because I'm the one who shot the gun. He jumped me twice on my own property, what was I supposed to do."[2]

### Was There a Violation of a Substantial Right at the Preliminary Hearing?

The record shows Pennington was represented by a deputy public defender from the Mendocino County Public Defender's office at the preliminary hearing held on January 18, 1990. On February 2, 1990, the deputy public defender requested to be relieved from further representation because the public defender's office had previously represented Steven Riel, a prosecution witness at the preliminary hearing. On February 5, 1990, the court appointed new counsel to represent Pennington.

---

[2] The parties stipulated to Pennington's statement to the investigator.

Shortly thereafter, Pennington filed a motion to set aside and dismiss the information based in part on his allegation that he was denied a substantial right at the preliminary hearing. In support of this motion, Pennington's new counsel averred: "[D]efendant was represented by the Public Defender's office at a time when that office had a serious conflict of interest in that it had previously represented a key prosecution witness, Steven Riel, in one or more felony cases brought against him by the District Attorney . . . . Apparently, the fact that [Steven Riel] has one or more felony convictions in Mendocino County, as well as at least one criminal case in Lake County, was never conveyed by the District Attorney's office to his public defender, nor did the latter evidently take timely steps to look for a conflict of interest during the three months of representation."

Pennington also submitted the declaration of his former counsel detailing the circumstances surrounding his discovery of the conflict: "During the course of my examination of witness Steven Riel at the preliminary hearing, I was first able to determine that this individual had at least two prior felony convictions. Nothing supplied to me by the District Attorney's office informed me of this prior to the hearing. Thus, my discovery of a conflict of interest involving this witness was fortuitous, arising out of a chance encounter and discussion about this case with other attorneys in my office."

The district attorney questioned whether a conflict of interest actually existed at the time of the preliminary hearing because Pennington's former counsel was not aware of any potential conflict until after the preliminary hearing and upon discovery, he immediately reported it. The district attorney also pointed out that the defense was provided a report prior to the preliminary hearing informing counsel that Riel was on parole at the time of the offense. The district attorney argued that this information should have put defense counsel on notice of the need to check for a possible conflict.

Following a hearing, the court granted Pennington's motion to set aside the information after concluding, "[t]he defendant's attorney's knowledge that Mr. Riel was on parole also created a duty to check out other than what they represented. It doesn't appear that there was an actual conflict, but there was and would be in the future an appearance of conflict. [¶] My ruling is that the defendant was denied a substantial right, in that he was represented by an attorney whose office had represented a key prosecution witness and, therefore, the motion to dismiss or set aside the Information is granted."[3]

---

[3]To the extent Pennington urges the trial court's dismissal was based upon the prosecution's failure to promptly provide discovery or defense counsel's inadequate representation at

■ The People argue the court erred in granting Pennington's motion to set aside and dismiss the information under section 995. Section 995 provides in pertinent part that upon motion the information "shall" be set aside by the court in which the defendant is arraigned if the defendant "had not been legally committed by a magistrate." (Subd. (a)(2)(A).) The California Supreme Court in *Jennings* v. *Superior Court* (1967) 66 Cal.2d 867 [59 Cal.Rptr. 440, 428 P.2d 304], explained the phrase "legally committed." ■ " 'An information, of course, will not be set aside merely because there has been some irregularity or minor error in procedure in the preliminary examination. [Citation.] But where it appears that, during the course of the preliminary examination, *the defendant has been denied a substantial right, the commitment is unlawful within the meaning of section 995, and it must be set aside upon timely motion.* [Citations.]' " (*Id.* at p. 874, italics added; see also *People* v. *Pompa-Ortiz* (1980) 27 Cal.3d 519, 523 [165 Cal.Rptr. 851, 612 P.2d 941].)

Substantial rights within the meaning of section 995 have been held to include the right to counsel, cross-examination and the presentation of an affirmative defense at the preliminary hearing, and substantial procedural rights such as the statutory right to complete the hearing in one session and to have a closed hearing. (See *Jennings* v. *Superior Court, supra*, 66 Cal.2d at pp. 874-875; *People* v. *Pompa-Ortiz, supra*, 27 Cal.3d at p. 523.) An accused is also not "legally committed" where the preliminary hearing is belatedly conducted beyond the statutory 10-court-day period from arraignment (*Landrum* v. *Superior Court* (1981) 30 Cal.3d 1, 6 [177 Cal.Rptr. 325, 634 P.2d 352]; *Irving* v. *Superior Court* (1979) 93 Cal.App.3d 596 [155 Cal.Rptr. 654]) or where the defendant is mentally incompetent. (*Bayramoglu* v. *Superior Court* (1981) 124 Cal.App.3d 718, 726-729 [176 Cal.Rptr. 487].)

Pennington made his section 995 motion on the ground that he had not been "legally committed" by the magistrate because he was denied the right of representation by counsel free from conflicts of interest. ■ The California Supreme Court has explicitly held that a section 995 motion for dismissal of the information is the appropriate procedure for challenging a "potential for bias or the appearance of a conflict of interest" at the preliminary hearing. (*People* v. *Superior Court* (*Greer*) (1977) 19 Cal.3d 255, 263, fn. 5 [137 Cal.Rptr. 476, 561 P.2d 1164].) In *Leversen* v. *Superior Court* (1983) 34 Cal.3d 530 [194 Cal.Rptr. 448, 668 P.2d 755], the California Supreme Court held that the trial court erred in failing to allow a defense attorney to withdraw because of a conflict of interest where his law firm

---

the preliminary hearing, these contentions are unavailing as is apparent from the court's comments at the time it granted his motion.

previously represented a prosecution witness in a different proceeding. After analyzing the situation, the court concluded that counsel may be hindered in effectively representing his present client by his former relationship with the prosecution witness. The California Supreme Court recently reiterated that obligations to clients in different proceedings may create a conflict: "Conflicts may also arise in situations in which an attorney represents a defendant in a criminal matter and currently has or formerly had an attorney-client relationship with a person who is a witness in that matter." (*People* v. *Bonin* (1989) 47 Cal.3d 808, 835 [254 Cal.Rptr. 298, 765 P.2d 460].) ■■■ On the basis of these authorities, it appears a conflict of interest may exist where an attorney, or a member of the attorney's firm or office, represents a criminal defendant after having previously represented a prosecution witness. The People do not contend otherwise.

The People's position is that Pennington cannot claim that a "substantial right" has been implicated, within the meaning of section 995, when the court found there was no actual conflict of interest at the time of the preliminary hearing, only "an appearance of conflict." We are concerned, as was the trial court, with the appearance of impropriety in representing criminal defendants. (See *People* v. *Rhodes* (1974) 12 Cal.3d 180, 185 [115 Cal.Rptr. 235, 524 P.2d 363].) However, unlike the typical conflict situation in which an attorney provides representation under circumstances justifying speculation that his or her performance was hampered by divided loyalties, counsel in this case represented Pennington during a time in which he was *completely ignorant of the facts giving rise to the potential conflict.* The possible conflict was not discovered until *after* counsel had discharged his responsibilities to Pennington; and the court was immediately advised and new counsel appointed. Pennington could not have been prejudiced.

While Pennington places great emphasis on the Supreme Court's pronouncement that even an "appearance of a conflict of interest" can constitute a denial of a substantial right, that language should be read with care. (*People* v. *Superior Court* (*Greer*), *supra*, 19 Cal.3d at p. 263, fn. 5.) Common sense dictates the court was referring to a situation where "[a] potential if not an actual conflict has been demonstrated and thus the appearance, at least, of impropriety." (*People* v. *Jackson* (1985) 167 Cal.App.3d 829, 833 [213 Cal.Rptr. 521].) We believe Pennington's counsel adequately assured the court there was neither real nor apparent impropriety in his representation of Pennington at the preliminary hearing. The thrust of counsel's statement was that at the time he represented Pennington, he was unaware of the public defender's previous representation of prosecution witness Riel. The trial judge obviously believed counsel's statement, and we will not second-guess that determination on appeal.

The evil in simultaneously representing competing interests is that counsel will feel constrained in attacking the credibility of a former client or will eschew a defense touching on confidential matters shared. (See *Leversen* v. *Superior Court, supra*, 34 Cal.3d at p. 538.) On this record, we can safely say there was no possibility that counsel was required to "pull his punches" in representing Pennington at the preliminary hearing. (See *People* v. *Easley* (1988) 46 Cal.3d 712, 725 [250 Cal.Rptr. 855, 759 P.2d 490].) Instead, under these unusual facts, we can say with absolute certainty that counsel represented defendant "as vigorously as he might have had there been no conflict." (*Ibid.*)

In summary, we conclude the court's finding that counsel was not aware of any potential conflict during the time he represented Pennington was supported by the record. This determination allows us to say with absolute certainty that Pennington was provided conflict-free representation at the preliminary hearing. Accordingly, Pennington was not denied a "substantial right," and was legally committed within the meaning of section 995.[4]

 The order setting aside the information is reversed, and the matter is remanded with instructions to reinstate the information.[5]

Low, P. J., and Haning, J., concurred.

[4] This case illustrates the importance of the obligation imposed on both the prosecution and defense to ensure that criminal defendants are provided with conflict-free representation. The district attorney's prompt transmission of information concerning prosecution witness Riel's criminal history would have given the public defender ample opportunity to check for a possible conflict. Correspondingly, the knowledge that prosecution witness Riel was on parole should have led defense counsel to examine the public defender's records to see if a potential conflict existed. Although there is nothing to suggest either the prosecution or defense acted in bad faith, it is evident that the early discovery of the potential conflict would have prevented multiple posthearing proceedings, averted a significant delay in Pennington's case and made this appeal unnecessary.

[5] As this opinion was being prepared for publication, this court received notice of Pennington's death. Despite this development, we do not find the issue presented by this appeal moot. "[I]f a pending case poses an issue of broad public interest that is likely to recur, the court may exercise an inherent discretion to resolve that issue even though an event occurring during its pendency would normally render the matter moot." (*In re William M.* (1970) 3 Cal.3d 16, 23 [89 Cal.Rptr. 33, 473 P.2d 737]; *In re Arias* (1986) 42 Cal.3d 667, 673, fn. 1 [230 Cal.Rptr. 505, 725 P.2d 664].) This appeal meets this criterion, and we have decided to publish the unedited opinion.