[Civ. No. 13355. First Dist., Div. Two. Feb. 7, 1947.]

SAMUEL M. STERN, Petitioner, v. THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent.

Leslie C. Gillen for Petitioner.

Ralph E. Hoyt, District Attorney, Arthur H. Sherry, Assistant District Attorney, and John S. Cooper, Deputy District Attorney, for Respondent.

DOOLING, J.—The petitioner Stern seeks by writ of prohibition to prevent his prosecution under an indictment returned to the Superior Court in and for Alameda County by the grand jury of that county. The indictment contains twenty-seven counts and charges Stern and seventeen other defendants in count one with a conspiracy to perform abortions in violation of section 274 Penal Code and in the other twenty-six counts with the performance of twenty-six specific abortions in violation of that code provision. The petitioner moved the trial court to quash the indictment as to him and that motion was denied.

The transcript of the testimony given before the grand jury contains a mass of evidence furnished by many witnesses that Stern engaged in the commission of abortions as a regular business first in Alameda County, then in Contra Costa County and later again in Alameda County, the operations continuing in Alameda County until the police armed with a search warrant entered his place of business in that county on August 23, 1946. The existence of a well organized conspiracy with at least several of his codefendants and others to carry on this illegal business is supported by ample evidence. It appears that physicians, druggists, persons who had previously engaged in the performance of abortions and others were solicited by Stern to refer to him women who were pregnant and desired to be aborted and that he agreed with such persons to pay them a percentage of the amounts received by him for performing abortions upon the women so referred to him. It appears that pursuant to this understanding many pregnant women were in fact sent to Stern by these persons for the purpose of being aborted, that Stern did perform abortions upon them and that he paid to the persons referring them a percentage of his fee as promised. It further appears that other of his codefendants were engaged with him in his business of performing abortions as employees and actively and knowingly assisted him therein. With this background outline of the general scheme of operation as shown by the transcript of the testimony heard by the grand jury we proceed to a consideration of the attacks directed against the indictment by this petitioner.

■ The petition alleges that unauthorized persons were present during the deliberations of the grand jury. (Pen. Code, §§ 906, 925, 925a.) We find nothing in the record before us to support this charge and several of the grand jurors who gave testimony on the hearing of the motion to quash the indictment testified specifically that no person other than the members of the grand jury was present during the grand jury's deliberations. The district attorney and some of his assistants were with the grand jury at times in the absence of the reporter. The grand jury is entitled to the legal advice of the district attorney (Pen. Code, § 925) and the law does not require the presence of a reporter while such advice is being given, the only requirement being that "the testimony that may be given" be reported (Pen. Code, § 925). The evidence given on the motion to quash is all to the effect that the grand jury did not engage in any of its deliberations in this case at any time while the district attorney or any of his assistants was present. The claim that all of the proceedings of the grand jury were not reported by the stenographic reporter is equally untenable. All of "the testimony given" before the grand jury in this cause was reported and transcribed in full compliance with the requirement of Penal Code, section 925.

■ The related complaint that the transcript of the testimony furnished to the petitioner as required by the same code section was incomplete because it did not contain copies of the exhibits introduced before the grand jury finds no support in the statutory law. The reporter, as above noted, is required only to report the testimony given and section 925 Penal Code in requiring a transcription of the reporter's shorthand notes to be delivered to the defendant must be taken to refer only to the testimony given, since that is all that is required to be reported. All evidence is not testimony. Testimony is limited to that sort of evidence which is given by witnesses speaking under oath or affirmation (*Mann* v. *Higgins*, 83 Cal. 66, 69 [23 P. 206]; 31 C.J.S. 507), a distinction which is clearly made in Code of Civil Procedure section 1827: "There are four kinds of evidence: 1. The knowledge of the court; 2. The testimony of witnesses; 3. Writings; 4. Other material objects presented to the senses."

Exhibits are not testimony, but evidence of the kind mentioned in subdivisions 3 and 4 of the section just quoted. Those falling under subdivision 4 are not even capable of tran-

scription. Being material objects exhibits may be made available to the defendants, as we understand the exhibits in this case have been made available by the trial court. There is not the same purpose to be served in reporting and transcribing them as in the case of testimony which can only be accurately preserved in that fashion, and the Legislature has with good reason not seen fit to require their inclusion in the transcript required to be furnished to the defendant.

█ Count one of the indictment charges a conspiracy ''from on or about the 1st day of January, 1940, to and including the 23rd day of September, 1946.'' The indictment was returned on September 23, 1946, at a little after 5 p. m. It is argued that as to count one the indictment does not show an offense committed prior to the finding of said indictment. (Pen. Code, § 959, subd. 5.) This point borders on the frivolous and we refuse to dignify it with extended discussion. The offense of conspiracy is a continuing one and the indictment alleges the crime of conspiracy with many overt acts all prior to September 23, 1946. This satisfies the code requirement. (*People* v. *Squires,* 99 Cal. 327 [33 P. 1092].)

█ After hearing the testimony of thirteen witnesses the grand jury returned an indictment against petitioner Stern and several others. The grand jury then continued its investigation, heard the testimony of many additional witnesses and finally returned the indictment here under attack. Because the thirteen witnesses who had testified prior to the return of the first indictment were not recalled to repeat their testimony it is argued that their testimony became *functus officio* and the grand jury acted in excess of its jurisdiction in relying on that testimony in support of the second indictment. In making this argument counsel misconceives the functions of the grand jury. It is an investigatory and inquisitorial body and takes evidence to determine whether any crimes have been committed which warrant the return of one or more indictments. █ Any evidence taken in the course of its investigations may be considered by it in determining whether a particular indictment should be found so long as at least twelve grand jurors who heard all of the evidence so considered concur in finding the indictment. No case exactly in point has been called to our attention, but the analogous situation of the return of a second indictment without taking any additional evidence seems controlling. It is settled that a grand jury may return a second indictment based upon the

same evidence heard before the returning of the first. (*People* v. *Follette,* 74 Cal.App. 178, 189-190 [240 P. 502]; *People* v. *Gilbert,* 26 Cal.App.2d 1, 6 [78 P.2d 770]; *People* v. *Busick,* 32 Cal.App.2d 315, 324 [89 P.2d 657].)

Section 940 of the Penal Code provides: "An indictment cannot be found without the concurrence of at least twelve grand jurors." The claim is made that the indictment was returned in violation of this requirement. In support of this contention it is argued that the evidence demonstrates that the grand jury had not sufficient time to consider a document of the length of this indictment and intelligently act on it. In this connection the reporter's notes show that after the examination of one witness on September 23, 1946, the reporter retired at 4:45 p.m., and returned at 5 p.m., at which time the foreman announced that the indictment had been voted. The district attorney and some of the grand jurors testified that the indictment was read to the grand jury, omitting some repetitious matter included in the same language in each count, after the reporter retired; that the district attorney then retired and the grand jury voted to return the indictment. The copy of the indictment made an exhibit in these proceedings consists of 87 typewritten pages containing from a maximum of 26 lines to a minimum of one line per page (the pages of less than 26 lines are due to the fact that each separate count commences on a new page). We may concede that the indictment could not have been read to the grand jury in fifteen minutes' time. However, the reporter testified that instead of fifteen minutes he was out of the jury room well over one hour and some of the grand jurors corroborated him in this. The trial judge heard the witnesses and denied the motion to quash. If he concluded, as we must assume, that the reporter's notes were in error as to the time when he left the grand jury room, there was ample testimony to support that finding. We cannot say that the testimony that the grand jury heard the indictment read and then voted to return it is inherently impossible, which is what we are in effect asked to do by this argument.

Some of the grand jurors were examined as witnesses in support of the motion to quash as to the proceedings taken in voting the indictment. Respondent argues that this testimony was forbidden by section 926 of the Penal Code which reads: "Every member of the grand jury must keep secret . . . in what manner he or any other grand juror may have voted on

a matter before them. . . .'' We do not find it necessary to decide the question whether this prohibition forbids the character of testimony given by the grand jurors in this proceeding, but will assume that that testimony was properly admitted by the trial judge.

Summarized that testimony establishes that on September 19, the grand jury was separately polled as to each of the eighteen defendants and voted that each one should be indicted; that the foreman gave the list of eighteen names to the district attorney and informed him of the action of the grand jury; that the district attorney prepared the indictment and read it to the grand jury on September 23; that after reading the indictment the district attorney left the grand jury room; and that thereupon the grand jurors were polled in one poll as to all defendants and all counts on the question whether the indictment should be returned against the eighteen defendants named, and at least twelve of the grand jurors voted to return the indictment on such poll.

Petitioner argues that the law requires a separate poll as to each defendant on each count. This would have required in this case 486 separate polls. The law makes no such requirement unless the court wishes to step into the legislative field. The code only requires ''the concurrence of at least twelve.'' If twelve grand jurors after hearing all the evidence and the reading of the indictment were satisfied to vote that the indictment as a whole should be returned against the eighteen defendants the indictment was found by ''the concurrence of at least twelve grand jurors'' and it would have been a fruitless and tedious procedure to poll them 486 times to ratify a concurrence that they were satisfied to express on a single ballot.

Petitioner cites *Eubanks* v. *State*, 5 Okla. Cr. 325 [114 P. 748], which tends to support his argument that separate ballots should have been taken as he contends. We refuse to follow the judicial legislation indulged in by that court. We think the sounder view is expressed in those cases which hold that if the requisite number of grand jurors actually concur in finding the indictment the manner in which their concurrence is expressed is immaterial. (*Ex parte Harlan*, 180 F. 119, 129-130; *Jacobs* v. *State*, 35 Tex.Cr. 410 [34 S.W. 110-111]; *Whitted* v. *State*, 188 Ark. 11 [63 S.W.2d 283].)

Finally relying upon the case of *Greenberg* v. *Superior Court*, 19 Cal.2d 319 [121 P.2d 713], petitioner levels several

attacks upon the sufficiency of the evidence to support the indictment. It is alleged in his petition for the writ of prohibition that there was no evidence to establish the crimes charged except the testimony of accomplices and persons whose testimony is required to be corroborated. This point was not stressed in the briefs or on oral argument but we may note that in the Greenberg case the court indicated that such testimony although not sufficient to support a conviction is sufficient to support an indictment. In that case the court said:

"In the case of *In re Kennedy*, 144 Cal. 634 [78 P. 34, 103 Am.St.Rep. 117, 1 Ann.Cas. 840, 67 L.R.A. 406], a defendant petitioned for a writ of *habeas corpus* on the ground that the uncorroborated testimony of an accomplice, which constituted the evidence presented to the grand jury, was insufficient to justify an indictment. The court properly refused the writ, holding, in accordance with the general rule, that it would not inquire into the sufficiency of the evidence." (*Greenberg* v. *Superior Court, supra*, 19 Cal.2d 319, 322. cf. *In re Schwitalla*, 36 Cal.App. 511 [172 P. 617].)

In any case the transcript contains the evidence of witnesses who appeared before the grand jury which sufficiently corroborates the testimony of the accomplices and women upon whom abortions were actually performed. It is sufficient to specify the testimony of a physician, who examined several women found in the place of business on August 23, when the officers executed the search warrant or who had recently been there, that his examinations indicated that these women had recently been pregnant and had apparently been aborted; the testimony of a number of women who had been physically examined by petitioner Stern that he had agreed to perform abortions upon them but that they had not returned to have such operations performed; and the testimony of a chiropractor who had been employed by Stern as a receptionist for a period of time and who, when he learned that Stern was engaged in the business of performing abortions, immediately quit his employment.

Complaint is made that the grand jury received hearsay testimony and other than the best evidence. The hearsay testimony was that of admissions made by other defendants and was admissible against the several defendants who had made such admissions. It is urged that in producing this testimony the district attorney should have informed the

grand jury that it could not be considered in determining whether to return an indictment against any other person than the one making the admission. No authority is cited in support of this argument. In the analogous case of a hearing by a committing magistrate it has been held that the production before the committing magistrate of incompetent evidence is immaterial if there is sufficient competent evidence to justify the committing magistrate in holding the defendant to answer. (*In re Kawaguchi,* 12 Cal.App. 498 [107 P. 727].) Where it appears that sufficient competent evidence was introduced to support the indictment we are satisfied that the indictment is not rendered void by the reception of some incompetent evidence.

 This petitioner's main attack upon the sufficiency of the evidence is based on the claim that there is no evidence that any of the alleged abortions was not necessary to save the life of the women upon whom it was performed. Petitioner concedes that the question whether the burden of proving this negative is on the prosecution is still unsettled in California. (See 1 Cal.Jur. 104-105.) Assuming that the burden of proving the negative is on the State the evidence before the grand jury was sufficient upon this point. It is true that no witness testified in so many words that the scores of abortions performed by petitioner were not necessary to save the lives of the women aborted. But the whole method of operation supports the strongest kind of inference that they were not. In addition to the evidence of the general method of operation outlined at the beginning of this opinion we cite the following evidence: Dozens of women testified to having abortions performed upon them by petitioner after a physical examination by petitioner for the purpose only of determining the fact and extent of the pregnancy. They were advised in case of later difficulty not to see their own physicians but to return to petitioner for treatment. As many as twenty or more abortions were at times performed by petitioner in a single day. Witnesses testified that petitioner had stated to them that there was nothing to worry about because he had ample protection in his operations for which he paid plenty. His place of business in Alameda County was closed by the police and he removed to Contra Costa County. His place in Contra Costa County was closed by the police and he returned to Alameda County. He offered a chiropractor one-third of his profits to let him put the chiropractor's name upon the

door of his place of business. The first time he operated in Alameda County he used the name of Dr. Ray and had that name upon the door of his place of business. When he re-opened in Alameda County he used the name of Dr. Stock and had that name upon his entrance door. Petitioner refused to operate upon women who were more than two and one-half or three months' pregnant. He insisted on payment in cash in advance and would not accept checks. He told a woman seeking an abortion that his price had gone up because his place had been closed and he had trouble. He admitted to the chiropractor, above mentioned, that he was engaged in performing illegal abortions. His practice was confined exclusively to abortions and he was not licensed to practice medicine or surgery.

The alternative writ heretofore issued is discharged and the petition for a writ of prohibition is denied.

Nourse, P. J., and Goodell, J., concurred.