[No. F039023. Fifth Dist. July 9, 2002.]

TERRY DALE DUSTIN, Petitioner, v.
THE SUPERIOR COURT OF STANISLAUS COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Tim Bazar, Public Defender, Martha J. Carlton-Magana, Deputy Public Defender; and Krista Hart for Petitioner.

No appearance for Respondent.

James C. Brazelton, District Attorney, and Rick Distaso, Deputy District Attorney, for Real Party in Interest.

**OPINION**

**WISEMAN, J.**—In capital cases, appellate courts and legislatures have long recognized the compelling need for ensuring reliability in determining

whether death is the appropriate punishment. The reason for this disparate treatment is obvious—the death penalty is qualitatively different even when compared to a life sentence. This fundamental principle undoubtedly explains why the California Legislature enacted Penal Code section 190.9, which requires in death penalty cases that a court reporter record and transcribe all proceedings.

In this death penalty case, the prosecutor takes the art of relying on technicalities to new heights, a practice often attributed to defense counsel. Terry Dale Dustin's case began as most cases do—with the filing of a complaint. However, due to the fact Dustin's trial counsel required surgery, the preliminary hearing was continued for approximately three months. Undaunted, the prosecutor decided to proceed by grand jury indictment, which went forward approximately one week after the continuance was granted. Relying on Penal Code sections 938 and 938.1 (which essentially require the transcription of only testimony in grand jury proceedings), and in direct contradiction to Penal Code section 190.9, the prosecutor affirmatively ordered the court reporter to leave while he made his opening and closing statements before the grand jurors. When asked why he did so, the prosecutor basically replied that this is how grand jury proceedings are conducted in Stanislaus County—with no apparent thought to the fact that this is a death penalty case. Now he seeks to justify his actions by arguing this is not a "case" or a "proceeding" within the meaning of Penal Code section 190.9, apparently forgetting Dustin's case began with the filing of a complaint.

We hold this was error in violation of Penal Code section 190.9. *This is a death penalty case.* The prosecutor's intentional failure to have all of the grand jury proceedings reported and transcribed has resulted in the denial of a substantial right and requires reversal. Further, we reject the prosecutor's attempt to place the burden on Dustin to show harm. How could a defendant ever show he or she was prejudiced in a grand jury proceeding where not even a settled statement can be reached because no judge, defense counsel, or defendant was present? How can a defendant or the People ever have any meaningful review of the grand jury proceedings when there is no transcript because a prosecutor inexplicably did not want one? The prosecutor implores us to find there is no prejudice because this is a very strong prosecution case. If that is so, we cannot fathom why any prosecutor would want to inject error into a case that carries the potential of death, knowing that if there is a conviction, the error will follow the case for the rest of its appellate life. Now is the time to rectify the prosecutor's error while it is still relatively easy and economical to do so—not wait 20 years down the appellate road.

## PROCEDURAL HISTORY

This case arises from a homicide in which the prosecution seeks the death penalty against Dustin (defendant). A complaint was filed in superior court as case No. 1001382, and set for preliminary hearing on January 10, 2001. Defendant requested and was granted a continuance to April 26, 2001. Afterward, the prosecution dismissed the complaint and proceeded by grand jury indictment, held on January 16, 2001. An indictment was returned the same day charging defendant with violations of murder under Penal Code[1] section 187 and alleging special circumstances of robbery, kidnapping, and burglary. (§ 190, subd. (a)(17)(A), (B) & (G).) Defendant's arraignment in superior court on the indictment was completed on May 31, 2001.

On July 16, 2001, defendant filed a motion to dismiss the indictment pursuant to section 995. The motion was based on the ground the prosecutor denied him due process by ordering the court reporter out of the grand jury proceedings during critical portions of the proceedings—the prosecutor's opening and closing statements. The motion was heard on August 30, 2001. The court found that the prosecutor decided when the court reporter would be present during the grand jury proceedings.

On September 13, 2001, the court denied the section 995 motion, finding the prosecutor did not err by choosing not to have his opening and closing statements reported. Even assuming error, the court found it was harmless, stating: "the evidence was overwhelming against both defendants, and I couldn't envision what the prosecution could have said in those ten minutes that would have compromised the independence of the grand jury."

A petition for writ of prohibition and/or mandate was filed here on October 2, 2001, and denied on October 4, 2001. A petition for review was filed in the California Supreme Court on October 16, 2001, and granted on December 19, 2001. The matter was ordered transferred here with directions to vacate our order denying mandate and "to issue an order directing respondent superior court to show cause why petitioner is not entitled to a complete transcript of the entire grand jury proceeding, and if so, whether dismissal of the indictment is an appropriate remedy for violation of that right."

On January 18, 2002, pursuant to the Supreme Court's direction, we ordered our denial of defendant's petition for writ of prohibition and/or mandate vacated and directed that an order to show cause issue.

---

[1]All statutory references are to the Penal Code unless otherwise noted.

## Factual History

The facts are taken from the testimony given in the grand jury proceeding and supplemented by exhibits attached to the petition.

On April 5, 1999, Gabriel Garcia went to the Gustine Police Department and reported that his brother, Santiago Garcia (Garcia), had been missing and he had last seen him on March 22, 1999. Officer James Hamera took the report and conducted an investigation. Gabriel and Hamera went to Garcia's apartment and contacted two men, Heriberto Artea and Mario Perez. Gabriel told Hamera he had seen Artea driving Garcia's automobile. Artea and Perez stated they did not know where Garcia was but had Garcia's permission to stay at the apartment. Artea also stated he had received permission to drive Garcia's car. Both Artea and Perez had last seen Garcia around March 22, 1999. Officer Hamera checked the residence and found no evidence of foul play. An inspection of Garcia's car produced negative results.

Artea stated he had seen Garcia arguing with a White male, possibly Sean Zunino. Gabriel described Garcia as a 41-year-old Hispanic male, five feet eight inches tall and weighing 190 pounds. Garcia walked with a limp due to a broken right kneecap suffered about 20 years earlier. Hamera subsequently contacted Zunino. Zunino denied knowing Garcia or having an argument with a Hispanic male on March 22, 1999.

On June 3, 1999, Stanislaus Sheriff's Deputy Ralph Ghimenti investigated the discovery of a man's body at Pete Miller Road near the Delta-Mendota Canal. The body was lying in an open field with the hands handcuffed behind its back. It was decomposing and appeared to have been dragged and partially eaten by animals. The head was located 26 feet away from the body. An autopsy determined the cause of death was a skull fracture and six stab wounds that were applied through Garcia's back. X-rays revealed the right kneecap had been surgically removed. There were no sharp injuries to the bones in the neck, suggesting the head may have been removed by animal activity.

Yvonne Dustin married defendant in 1988 and divorced him in 1996. She received a call from defendant in late March or early April of 1999, asking her to pick him up in Stockton because his vehicle had broken down. He sounded very hurried and wanted her to come right away. The next morning, Dustin paid her cousin Patricia Carter $100 to give her a ride to pick up defendant. On the trip back, defendant stated, "Yvonne, Yvonne, I killed a man." He also stated, "I'm telling you, Yvonne, for real," and he drew his finger across his neck.

During late March 1999, defendant was Maria Palma's boyfriend. One night, defendant came to his and Palma's residence (a camper) and asked her to get a knife for him. She did so, and defendant went into his van and cut out a portion of the rug that was bloodied and threw this piece on the camper. They left together headed for Stockton but the van broke down in Modesto. Earlier that afternoon, Palma called Garcia (known to her only as Na-Na-Na), and asked if he had speed for sale. Garcia rudely told her he did not, to not call him there, and hung up. Defendant overheard the conversation and became angry with Garcia. About 9:00 p.m., defendant told Palma he was going to Garcia's place to rob him and invited her along. She declined. Defendant then stated he was going to pick up Sean Zunino and left. He returned around 5:00 a.m. asking for the knife. During their trip to Stockton, defendant told her he had killed Na-Na-Na. He said he hit the door and it opened. As Na-Na-Na got up, defendant hit him in the jaw with a flashlight, punched him, and then stabbed him in the heart with an ice pick. Defendant said he cut Na-Na-Na's finger off to take his ring. He put Garcia in his van while Garcia was still alive and he and Zunino drove Garcia to a canal on Interstate 5. Zunino became frightened and wanted to leave, however, defendant made Zunino stab Garcia one time.

On December 22 or 23, 1999, Sheriff's. Detective Scott Hardman interviewed defendant at the sheriff's office regarding Garcia's murder. Defendant waived his constitutional rights and agreed to talk with Hardman. After initially denying knowledge about the murder, defendant implicated Sean Zunino. Later during the interview, defendant gave a full confession to the murder. He stated he was angry with Garcia because he believed he was sexually involved with Palma and was providing her with methamphetamine. He recruited Zunino to go to Garcia's home and rob him. About 2:30 a.m., defendant and Zunino went in defendant's van to Garcia's one-room apartment. Defendant parked the van in an alley. They went to the front door, Zunino kicked it open, and both rushed in. Garcia was in bed and reached for his pants. Defendant then struck Garcia in the head with a flashlight four to six times. As Garcia was going in and out of consciousness, defendant rolled him onto his stomach and handcuffed his hands behind his back. Zunino and defendant ransacked the house for money and drugs. They then put Garcia in the van and drove to a deserted section of the Delta-Mendota Canal. After leading Garcia to a grassy area, defendant slit his throat several times, but Garcia did not die. Defendant then placed Garcia on his stomach and stabbed him five to six times, back to front, with a long-blade knife, going through his heart. Defendant also cut off one of Garcia's fingers and removed a ring. Defendant then threw the knife, his clothing, and Garcia's wallet into the canal. Only a small-blade knife was later recovered by a dive team. Defendant ultimately walked detectives through the crime scene and showed them where he committed the acts just described.

## DISCUSSION

### I. *Entitlement to a complete transcript in a grand jury proceeding*

 Based on directions from the California Supreme Court, we issued an order to show cause to respondent court "why . . . petitioner is not entitled to a complete transcript of the entire grand jury proceeding, and if so, whether dismissal of the indictment is an appropriate remedy for a violation of that right." Real party in interest (the People) argues defendant is not entitled to a complete transcript, and, even if he is, dismissal of the indictment is not an appropriate remedy.

*People v. Superior Court (Mouchaourab)* (2000) 78 Cal.App.4th 403 [92 Cal.Rptr.2d 829] (*Mouchaourab*) recently undertook a comprehensive analysis of the background pertaining to grand jury proceedings and the common law and statutory development over the years. (*Id.* at pp. 413-425.) The court considered "a significant issue of criminal procedure: to what extent may an indicted defendant obtain discovery of nontestimonial grand jury proceedings for the purpose of preparing a Penal Code section 995 motion to dismiss the indictment on grounds of lack of probable cause?" (*Id.* at p. 407, fn. omitted.) The court reached this general conclusion: "In sum, California law provides that a defendant has a due process right not to be indicted in the absence of a determination of probable cause by a grand jury acting independently and impartially in its protective role. [Citations.] An indicted defendant is entitled to enforce this right through means of a challenge under section 995 to the probable cause determination underlying the indictment, based on the nature and extent of the evidence and the manner in which the proceedings were conducted by the district attorney. [Citations.] In reviewing the merits of such a challenge, courts have routinely considered relevant nontestimonial portions of the record of the grand jury proceedings." (*Mouchaourab, supra,* 78 Cal.App.4th at pp. 424-425.) With these general rules in mind, we consider the People's arguments.

The People point out that sections 938 and 938.1, which provide for transcription and disclosure of testimony, are the only statutes that expressly authorize disclosure of grand jury proceedings. Section 938 provides:

"(a) Whenever criminal causes are being investigated before the grand jury, it shall appoint a competent stenographic reporter. He shall be sworn and shall report in shorthand the testimony given in such causes and shall transcribe the shorthand in all cases where an indictment is returned or accusation presented.

"(b) At the request of the grand jury, the reporter shall also prepare transcripts of any testimony reported during any session of the immediately

preceding grand jury." (Added by Stats. 1959, ch. 501, § 2, p. 2451; amended by Stats. 1975, ch. 298, § 3, p. 743, eff. Aug. 22, 1975.)

If an indictment is found, section 938.1 provides the procedural requirements for filing the transcript with the court and delivering copies to the parties. The People note that other sections allow the district attorney to conduct any business before the grand jury (see §§ 934, 935). They also point out the absence of any language that requires the prosecutor to record or report any advice that is given to the grand jury. Finally, the People rely on *Stern v. Superior Court* (1947) 78 Cal.App.2d 9, 13 [177 P.2d 308], which held: "The grand jury is entitled to the legal advice of the district attorney [citation] and the law does not require the presence of a reporter while such advice is being given, the only requirement being that 'the testimony that may be given' be reported [citation]." The People conclude that because the district attorney's opening statement and closing argument were not testimony, their decision not to have them reported was proper. As a result, the People contend they have fulfilled their duty to provide defendant with a complete record of the grand jury proceedings.

The People's argument was rejected in *Mouchaourab* in light of California Supreme Court authority enlarging a defendant's rights to challenge an indictment, specifically, *Johnson v. Superior Court* (1975) 15 Cal.3d 248 [124 Cal.Rptr. 32, 539 P.2d 792], *People v. Backus* (1979) 23 Cal.3d 360 [152 Cal.Rptr. 710, 590 P.2d 837], and *Cummiskey v. Superior Court* (1992) 3 Cal.4th 1018 [13 Cal.Rptr.2d 551, 839 P.2d 1059]. The *Mouchaourab* court explained:

"The holding of *Stern* is a narrow one: Exhibits and advice given by the district attorney are not strictly part of the 'testimony' before the grand jury and thus are not required to be reported under sections 938 and 938.1 (former § 925). As noted in the previous section, the Supreme Court in *Johnson* later found that section 939.7 provided a separate statutory basis for allowing defendant to obtain nontestimonial portions of the proceedings in order to determine whether the prosecutor had advised the grand jury regarding exculpatory evidence. And cases decided thereafter indicate that nontestimonial portions of the proceedings were routinely provided to defendants mounting a challenge to the indictment, even though no statute specifically required transcription. (See, e.g., *People v. Snow* [(1977)] 72 Cal.App.3d 950, 958 [140 Cal.Rptr. 427] [record of hearing reveals district attorney advised grand jury of possible exculpatory evidence]; *People v. Laney* [(1981)] 115 Cal.App.3d 508, 512-513 [171 Cal.Rptr. 493] [record included district attorney's admonitions and dialogue before the grand jury with witnesses who did not testify]; *People v. Coleman* [(1978)] 84

Cal.App.3d 1016, 1019 [149 Cal.Rptr. 134] [transcript contained district attorney's comments and answers to grand juror's questions at conclusion of testimonial evidence]; *Backus, supra,* 23 Cal.3d 360, 393 [grand jury advised of certain evidence admissible for a limited purpose]; *Cummiskey, supra,* 3 Cal.4th 1018, 1031-1032 [transcript of question and answer exchange between grand jurors and district attorney quoted]; [s]ee also *People v. Jones* (1990) 51 Cal.3d 294, 318 [270 Cal.Rptr. 611, 792 P.2d 643], acknowledging that '[i]n cases prosecuted by indictment, every indicted defendant is entitled to a *complete transcript* of the proceedings . . . .') (Italics added.)

"In *Backus,* the court found that a defendant's right to challenge an indictment for lack of probable cause under section 995 could include a claim that the state of the evidence, 'under the *instructions and advice given by the prosecutor,*' compromised the grand jury's ability to reach a determination independently and impartially. (*Backus, supra,* 23 Cal.3d at p. 393, italics added.) Similarly in *Cummiskey,* the court found that a defendant had a cognizable claim under section 995 if he or she could show prejudicial error in 'the manner in which the prosecutor conducted the grand jury proceedings.' (*Cummiskey, supra,* 3 Cal.4th at p. 1022, fn. 1.) Thus even though, as the *Stern* court held, sections 938 and 938.1 require only transcription of testimony, that does not prohibit discovery of other portions of the record permitted under other statutes and subsequent law." (*Mouchaourab, supra,* 78 Cal.App.4th at p. 430.)

Contrary to the People's position, sections 938 and 938.1 and *Stern* are not necessarily controlling on whether defendant is entitled to a complete transcript of the entire grand jury proceeding.

■ "In interpreting these statutes we are aided by well-established rules of statutory construction, which require that we construe statutes 'to effectuate their purpose and intent, reading statutory schemes as a whole and harmonizing their provisions.' [Citations.] We read the words of statutes with their commonsense meanings, and avoid interpretations 'which defy common sense or which might lead to mischief or absurdity, including literal meanings which would lead to a result not intended by the Legislature.' [Citations.] Thus if a literal reading of one statutory provision regarding grand jury proceedings would render it inconsistent with other statutes, such an interpretation may be rejected in favor of one which is in harmony with other parts of the statutory scheme. (*Farnow v. Superior Court* [(1990)] 226 Cal.App.3d 481, 490 [276 Cal.Rptr. 275].) For example, in *Farnow,* the court considered an amendment to section 939, which expressly provided that only certain parties could be present at *criminal* sessions of the grand jury, ostensibly implying that there were no limits as to who could be present

at *civil* sessions. [Citation.] The court concluded that the Legislature could not have intended this result, which would have rendered section 939 inconsistent with other statutes governing grand jury proceedings, and therefore rejected a literal reading of the amendment. [Citation.]" (*Mouchaourab, supra,* 78 Cal.App.4th at p. 428.)

■ In this case, the People are seeking to impose the death penalty against defendant. Section 190.9, subdivision (a)(1), provides: "In any case in which a death sentence may be imposed, all proceedings conducted in the municipal and superior courts, including all conferences and proceedings, whether in open court, in conference in the courtroom, or in chambers, shall be conducted on the record with a court reporter present. The court reporter shall prepare and certify a daily transcript of all proceedings commencing with the preliminary hearing. Proceedings prior to the preliminary hearing shall be reported but need not be transcribed until the municipal or superior court receives notice as prescribed in paragraph (2) of subdivision (a)."

In *People v. Holt* (1997) 15 Cal.4th 619, 708 [63 Cal.Rptr.2d 782, 937 P.2d 213], the court held that "Section 190.9, subdivision (a), mandates that all proceedings in a capital case be conducted on the record and reported." The People seek to avoid the application of section 190.9 to "all proceedings" by arguing that grand jury proceedings are not "conducted in the municipal and superior courts . . . ." However, the cases relied upon by the People do not support this statutory interpretation. ■ As stated in *People v. Superior Court (1973 Grand Jury)* (1975) 13 Cal.3d 430, 438-439 [119 Cal.Rptr. 193, 531 P.2d 761]:

"Petitioner's argument misconceives the nature of the grand jury institution in California and its relationship to the courts. Although petitioner suggests that the grand jury is a completely freewheeling entity, separate and distinct from the judicial branch of government, the governing provisions uniformly refute such a characterization. Penal Code section 888 defines a grand jury as 'a body of the required number of persons returned from the citizens of the county *before a court of competent jurisdiction* . . . .' (Italics added.) As this section indicates, and as the California precedents have long recognized, the grand jury is a 'judicial body' [citation], 'an instrumentality of the courts of this state . . . .' [Citations.]

"As this court stated emphatically almost 90 years ago: 'There is no doubt that a grand jury is part of the court by which it is convened, and that it is under the control of the court . . . .' [Citations.] In this regard, it is well established that the convening court 'may at any time, in the exercise of its

jurisdiction, order [the grand jury] to be discharged.' [Citation.]" (*People v. Superior Court (1973 Grand Jury), supra,* 13 Cal.3d at pp. 438-439, fn. omitted.)

**(1d)** Even less persuasive is the People's argument that this matter "is not a 'case' " within the meaning of section 190.9.[2] It is true that if an indictment had not been presented, this matter would not be a "case" to which section 190.9 would apply. In that situation, of course, sections 938 and 938.1 also would not apply, and this issue would not be before us. We are concerned here only with those situations where an indictment is returned in a death penalty case, not where an indictment is not returned or where the death penalty does not apply. Where an indictment is returned in a death penalty case, we hold that section 190.9 unequivocally requires "all proceedings . . . be conducted on the record with a court reporter present."

Contrary to the People's position, it is immaterial whether we label the grand jury proceeding an "adjudicative proceeding" or a "charging proceeding" for purposes of finding that section 190.9 applies to "all proceedings" under the plain meaning rule. (But see, *ante,* fn. 2.) As noted earlier, " 'There is no doubt that a grand jury is part of the court by which it is convened, and that it is under the control of the court. . . .' " (*People v. Superior Court (1973 Grand Jury), supra,* 13 Cal.3d at p. 438.) By including the "municipal and superior courts," section 190.9 must be read to apply to grand jury proceedings under either of these courts. It should not be read, as argued by the People, to have excluded grand jury proceedings because they are not specifically mentioned. The People might have a valid argument that section 190.9 does not apply where the grand jury was convened by a federal district court. Further, even if the plain meaning rule did not apply (*People v. Weatherill* (1989) 215 Cal.App.3d 1569, 1573 [264 Cal.Rptr. 298]), nothing in the legislative history suggests the Legislature intended to exclude grand jury proceedings from the scope of section 190.9.

Finally, the People note that a grand jury proceeding must remain secret, subject to disclosure only as regulated by statute. They argue this prohibition does not change simply because the grand jury is investigating a case in which the death penalty may eventually be imposed. Generally speaking, we agree. However, the People's argument is undermined because the disclosure requirement is specifically regulated by section 190.9. As a result, there is no arbitrary violation of the traditional secrecy imposed in grand jury proceedings.

---

[2]Further, this argument is disingenuous because this matter had earlier been filed as a complaint in Stanislaus County, case No. 1001382. The charging decision had already been made by the district attorney prior to presenting evidence to the grand jury.

In sum, we conclude that, in grand jury proceedings where the death penalty may be imposed, section 190.9 supplements the requirements of sections 938 and 938.1. As a result, a defendant is entitled to a complete transcript of the entire grand jury proceeding—not just a transcript of testimony. Harmonizing the statutes in this manner avoids any equal protection and due process concerns vis-à-vis death penalty cases processed through the complaint and preliminary hearing procedure. (*McGown v. Superior Court* (1977) 75 Cal.App.3d 648, 652 [142 Cal.Rptr. 262] [we construe the statutory scheme to avoid doubt as to its constitutionality].)

It is the trial court's responsibility to resolve discovery disputes where the People propose to limit disclosure of portions of grand jury proceedings. (*Mouchaourab, supra,* 78 Cal.App.4th at p. 437.) However, the People's decision not to have all the proceedings recorded in this case removed discretion the trial court might otherwise have been able to exercise. Further, it violated the intent behind section 190.9 that death penalty cases be treated with greater protections to assure reliability. "In focusing upon the capital context presented by the case before us, we are mindful of the United States Supreme Court's repeated admonitions that ' "the penalty of death is qualitatively different from a sentence of imprisonment, however long,' " and that, as a result, ' "there is a corresponding difference *in the need for reliability in the determination that death is the appropriate punishment in a specific case.*" ' [Citations.]" (*People v. Horton* (1995) 11 Cal.4th 1068, 1134 [47 Cal.Rptr.2d 516, 906 P.2d 478]; *People v. Morris* (1991) 53 Cal.3d 152, 210, fn. 11 [279 Cal.Rptr. 720, 807 P.2d 949], overruled on another point in *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn. 1 [38 Cal.Rptr.2d 394, 889 P.2d 588] ["proceedings in capital cases should be conducted on the record to remove any conceivable doubt as to what took place and to preclude unnecessary disputes and delays in settling the record for further proceedings"].)

It is difficult to imagine an innocent reason why a prosecutor would instruct a court reporter to leave only during his or her comments to the grand jury—especially where no judge, jury, defense counsel, or client is present. This procedure not only violated defendant's rights under the statutory scheme, but also precluded any effective review of the prosecutor's comments by the trial court. It seems inescapable that the prosecutor's exclusion of the court reporter was done for the express purpose of precluding discovery by the defendant of his opening statement and closing argument.

The prosecutor's comments to the court are telling:

"THE COURT: Mr. Distaso [prosecutor], the main thing is tell me how you get around a holding in the Mouchaourab case which indicates that Stern,

that you're relying on, clearly right on point for you, on one page they indicate Stern is little viability.

"MR. DISTASO: The reason—it's simple, Your Honor. We—I don't understand why—well, I gotta say this: Miss—first off, grand juries have been conducted in the fashion that they were in this case in this county ever since that I've been here, been five years. And so I know they've been going on longer than that.

"Miss Carlton [defense counsel] mentioned the Dewalter Mitchell case, another case that was done, a similar grand jury, a 995 was denied in that case based on the same issue. So this is not anything that the cour—this is not a case of first impression here in this courthouse regarding this issue.

"THE COURT: I can't consider what other judges have done.

"MR. DISTASO: I understand. But my point is that there is nothing in the Mouchaourab case that says that the People are required to transcribe portions of the grand jury other than—I mean report and then transcribe portions of the grand jury other than that which is required under the statute. Nothing in that case says that at all.

"There is no reason for the People to take every case that comes down and interpret it in a fashion, you know, most favorable to the defense so we're continually giving the defendants more than they're legally entitled to. They're legally entitled to transcriptions— I mean to reporting of testimonial portions of the grand jury, and that's what they have received. The Mouchaourab case was a very specific situation, where the grand jury—I mean the district attorney himself decided to report those other areas, and then not turn them over. And I can see the court's reasoning on that point. Well, it is information that's available, so we'll turn it over. The court in, nowhere in that opinion does it state, 'And from now on you DAs, you have to record every portion of a grand jury proceeding.' That is not what that holding says."

We make this point in keeping with comments made by the California Supreme Court in *People v. Holt, supra*, 15 Cal.4th at page 708, footnote 30: "We again note our disapproval of these clear violations of section 190.9. Court and counsel by now should be well aware of the importance of complying with section 190.9, which was enacted in 1984. [Citation.]" Further, the prosecutor's behavior is relevant in addressing whether dismissal is an appropriate remedy for the failure to provide a complete transcript of the grand jury proceedings.

## II. *The appropriate remedy*

(5) The trial court denied the motion to dismiss the indictment because, under its reading of the present state of the law, this was not required. In addition, the court expressed its belief that case law likely would require the recording of all grand jury proceedings in future death penalty cases. The court also found that, assuming error, "the evidence is overwhelming against both defendants, and I couldn't envision what the prosecution could have said in those ten minutes that would have compromised the independence of the jury. Therefore, . . . it was . . . harmless error."

The People argue the error is subject to a harmless error analysis. Providing no citation to authority to support their position, the People contend the burden of showing prejudice is on defendant. The People cite *post*conviction cases, which require a showing of prejudice by the defendant. (See e.g., *People v. Holt, supra,* 15 Cal.4th at p. 708 ["Since procedures for settlement of the record are often adequate to resolve [the] disputes and avoid prejudice, . . . a defendant bears the burden of demonstrating that the record is not adequate to permit meaningful appellate review"]; *People v. Freeman* (1994) 8 Cal.4th 450, 509 [34 Cal.Rptr.2d 558, 882 P.2d 249, 31 A.L.R.5th 888] ["Defendant 'bears the burden of demonstrating that the appellate record is not adequate to permit meaningful appellate review' "]; *People v. Cummings* (1993) 4 Cal.4th 1233, 1333-1334, fn. 70 [18 Cal.Rptr.2d 796, 850 P.2d 1] ["on appeal the court does not presume prejudice"]; *People v. Roberts* (1992) 2 Cal.4th 271, 326 [6 Cal.Rptr.2d 276, 826 P.2d 274] [assuming, without deciding, that federal due process was violated by failure to record proceedings and depriving defendant of the right of meaningful review, the error was harmless beyond a reasonable doubt].)

Since this is a pretrial matter, these cases are not applicable. This case is more analogous to a violation of a substantial right at a preliminary hearing. (*People v. Pompa-Ortiz* (1980) 27 Cal.3d 519 [165 Cal.Rptr. 851, 612 P.2d 941].) In *Pompa-Ortiz*, the court settled the prejudice standards to be applied. First, however, it noted: "It is settled that the denial of a substantial right at the preliminary examination renders the ensuing commitment illegal and entitles a defendant to dismissal of the information on timely motion." (*Id.* at p. 523, citing *Jennings v. Superior Court* (1967) 66 Cal.2d 867, 874 [59 Cal.Rptr. 440, 428 P.2d 304].) The court then held: "Henceforth irregularities in the preliminary examination procedures which are not jurisdictional in the fundamental sense shall be reviewed under the appropriate standard of prejudicial error and shall require reversal only if defendant can show that he was deprived of a fair trial or otherwise suffered prejudice as a result of the error at the preliminary examination. The right to relief without any showing

of prejudice will be limited to pretrial challenges of irregularities. At that time, by application for extraordinary writ, the matter can be expeditiously returned to the magistrate for proceedings free of the charged defects. We follow this approach in other contexts. In *People* v. *Wilson* (1963) 60 Cal.2d 139 [32 Cal.Rptr. 44, 383 P.2d 452], for example, we held that denial of defendant's right to trial within a prescribed statutory time period was not reversible error on appeal in the absence of a showing of prejudice. If the issue is raised before trial, however, prejudice is presumed and the information is dismissed. [Citations.]" (*People v. Pompa-Ortiz, supra,* 27 Cal.3d 519, 529.)

In *People v. Towler* (1982) 31 Cal.3d 105, 123 [181 Cal.Rptr. 391, 641 P.2d 1253], the court held: "The reasoning in *Pompa-Ortiz* applies with equal force in the grand jury context." Similarly, we held in *People v. Laney, supra,* 115 Cal.App.3d 508, 513: "We conclude and hold that the rule announced in *People v. Pompa-Ortiz*[, *supra,*] 27 Cal.3d 519, 529 . . . , with regard to irregularities in preliminary examination procedures applies also to grand jury proceedings. Consequently the irregularities, if any there be, require reversal only if an accused can show he was deprived of a fair trial or otherwise suffered prejudice. Relief without showing of prejudice is limited to pretrial challenges."

We conclude it was error for the trial court to have placed the burden on defendant to show prejudice as a result of the denial of his right to a transcript of the entire grand jury proceedings. In the absence of a transcript, coupled with the fact that no judge or defense representative was present, it is difficult to imagine how a defendant could ever show prejudice.

In addition, we disagree that nothing the prosecutor argued to the grand jury could have compromised the grand jury's independence. Although we can only speculate what might have occurred in this case (due to the prosecutor's decision to have the court reporter excluded), suffice it to say that argument is a critical stage of the proceedings. Further, the intentional failure to record the proceedings as mandated by statute in death penalty cases resulted in the denial of "a substantial right," i.e., the ability to raise prosecutorial misconduct and to receive meaningful review of any alleged error. Under these circumstances, defendant does not need to show he suffered prejudice beyond his right to the records (*Stroud v. Superior Court* (2000) 23 Cal.4th 952, 963, fn. 4 [98 Cal.Rptr.2d 677, 4 P.3d 933]), and prejudice is presumed. (*People v. Pompa-Ortiz, supra,* 27 Cal.3d at p. 529.)

On May 2, 2002, after briefing was complete but before oral argument, the People filed a letter requesting we consider *Mills v. Superior Court* (1986) 42

Cal.3d 951 [232 Cal.Rptr. 141, 728 P.2d 211], on the issue of prejudice. First, *Mills* does not address who bears the burden of showing prejudice/ harmless error. As a result, it does not support the People's contention that the burden is on defendant. Second, the circumstances of the *Mills* case are distinguishable from those here, making its analysis of little assistance.

In *Mills,* Justice Mosk, in a lead opinion, invalidated section 872, subdivisions (b) and (c), "which authorize[d] the admission at preliminary hearings of written statements in lieu of testimony of any witness who [was] not an eyewitness to or a victim of a crime against his person," as unconstitutional. (*Mills v. Superior Court, supra,* 42 Cal.3d at pp. 954, 959.) Under the statute, a finding of probable cause could be based in whole or in part on such hearsay evidence unless the accused initiated " 'reasonable efforts' " to secure attendance of the witness. (*Id.* at pp. 954-955.) The lead opinion held the " 'reasonable efforts' " requirement inherently placed an unconstitutional burden on the rights of a defendant at a preliminary hearing. (*Ibid.*) Since the statute was invalid, the magistrate erred in admitting the hearsay affidavit of the victim-witness.

The opinion then applied the rule adopted in *Rogers v. Superior Court* (1955) 46 Cal.2d 3, 7 [291 P.2d 929], which held that prohibition is an appropriate means to test the validity of an indictment or information when it is challenged on the ground that the defendant was indicted or committed without reasonable or probable cause. *Rogers,* however, qualified this by holding that "when prohibition is sought under section 999a of the Penal Code, the writ will issue if no competent evidence was offered at the preliminary examination to support a reasonable belief that the offense charged was committed and that the defendant committed it." (*Id.* at p. 8.) In *Jennings v. Superior Court, supra,* 66 Cal.2d 867, 878, the court summarized its *Rogers* holding as follows: "[W]e held that prohibition does not lie to review rulings of the magistrate on the admissibility of evidence at the preliminary hearing, unless the commitment is based entirely on incompetent evidence." Finally, in *Mitchell v. Superior Court* (1958) 50 Cal.2d 827, 830 [330 P.2d 48], the court held the magistrate had erred by sustaining objections to defendants' questions seeking to ascertain the name of informers in the case. Relying on *Rogers,* the court found it unnecessary to decide whether the denial of cross-examination at the preliminary hearing was the denial of a substantial right, instead finding the error harmless, reasoning: "Since there was competent evidence to justify committing defendants and disclosure of the names of the informers can be obtained at the trial, defendants were not prejudiced by the error or deprived of any substantial right." (*Ibid.*)

The lead opinion in *Mills* applied these cases to its circumstances and determined the error in admitting the affidavit was harmless. It first noted

that the testimony of the owner of the van, who provided the affidavit, was not essential at the preliminary hearing or even at trial. (*Mills v. Superior Court, supra,* 42 Cal.3d at p. 961.) Consequently, the defendant was not deprived of any " 'substantial right' " by his inability to cross-examine the affiant at the preliminary hearing. (*Id.* at p. 962.) Further, since there was competent evidence to justify committing the defendants, the magistrate's error did not justify a writ of prohibition.

Here, unlike *Rogers,* the validity of the indictment is not being challenged on the ground that defendant was indicted without reasonable or probable cause. Thus, the *Rogers* test, applied in *Mills,* does not apply. Unlike the circumstances in *Mills,* here the People's decision to deny defendant a recordation of all the proceedings amounted to a denial of a substantial right. In addition, in *Mills,* the court was able to review the witness's affidavit to determine that denial of cross-examination of a nonessential witness whose testimony was unnecessary even at trial, did not amount to a denial of a substantial right. Here, the People's decision not to record all the proceedings, in direct contravention of section 190.9, has eviscerated meaningful judicial review at all levels. We are unable to determine whether the advice given by the prosecutor compromised the ability of the grand jury to reach a determination independently and impartially. Further, unlike in *Mitchell,* this deficiency will not be cured in the future by disclosure before trial. Because neither a judge nor defendant's counsel was present at the proceedings, a settled statement allowing some type of review cannot be obtained. Consequently, *Mills* is inapplicable and defendant does not need to show he suffered prejudice beyond his right to the records (*Stroud v. Superior Court, supra,* 23 Cal.4th at p. 963, fn. 4) and prejudice is presumed. (*People v. Pompa-Ortiz, supra,* 27 Cal.3d at p. 529.) At this time, a writ may issue without prejudice to the People continuing to prosecute these charges by seeking another indictment free of the charged defects or by filing another complaint. (*Johnson v. Superior Court, supra,* 15 Cal.3d at p. 255.)

DISPOSITION

Let a peremptory writ of mandate issue vacating respondent court's order denying defendant's motion to dismiss the indictment and directing the superior court to enter a new order granting the motion. The writ shall issue without prejudice to the People continuing to prosecute these charges by seeking another indictment free of the charged defects or by filing another complaint.[3] The stay order is vacated.

Vartabedian, J., concurred.

---

[3]After the matter was submitted for decision following oral argument held on May 13, 2002, a letter was received from the Stanislaus County District Attorney dated June 12, 2002.

**ARDAIZ, P. J.**—I dissent.

I have no problem with the notion that a trial court has discretion to order disclosure of a transcription of portions of grand jury proceedings beyond the testimony given in such causes. (See *People v. Superior Court (Moucha-ourab)* (2000) 78 Cal.App.4th 403, 428-429, 437 [92 Cal.Rptr.2d 829] (*Mouchaourab*).) I also recognize that, under California law, "a defendant has a due process right not to be indicted in the absence of a determination of probable cause by a grand jury acting independently and impartially in its protective role. [Citations.] An indicted defendant is entitled to enforce this right through means of a challenge under [Penal Code] section 995 to the probable cause determination underlying the indictment, based on the nature and extent of the evidence and the manner in which the proceedings were conducted by the district attorney. [Citations.]" (*Mouchaourab, supra,* 78 Cal.App.4th at pp. 424-425.)[1] While the better practice is to have a steno-graphic reporter transcribe the complete grand jury proceeding, however, nothing in the statutes or case authorities explicitly *requires* that a complete transcription be available.[2]

The majority implicitly recognize this and rely on the requirement of section 190.9, subdivision (a)(1), that "[i]n any case in which a death sentence may be imposed, all proceedings . . . shall be conducted on the record with a court reporter present." Unlike my colleagues, I cannot so easily dismiss the People's argument that this matter is not a "case" within the meaning of the statute.

With exceptions not relevant here, "[e]very public offense must be pros-ecuted by indictment or information . . . ." (§ 682.) "An indictment is an accusation in writing, presented by the grand jury to a competent court,

The letter states that the district attorney has formally made an election not to seek the death penalty in this case, and that both the superior court and defense counsel have been informed of this election. In light of this election, defendant may wish to formally waive the prosecu-tor's error and his remedy of dismissal of the indictment by withdrawing his motion to dismiss the indictment when the matter is remanded to the superior court.

[1] All statutory references are to the Penal Code.

[2] In *People v. Jones* (1990) 51 Cal.3d 294, 318 [270 Cal.Rptr. 611, 792 P.2d 643], the California Supreme Court stated that in cases prosecuted by indictment, an indicted defendant is entitled to a complete transcript of the proceedings. In making this statement, however, the court cited section 938.1, which in turn implicitly refers to section 938. By its terms, section 938 provides for transcription of the "testimony" given before a grand jury. (§ 938, subds. (a), (b).) As the issue in *Jones* had nothing to do with the extent of transcription required in grand jury proceedings, I do not read that case as authority for the proposition that a complete transcription of nontestimonial portions must be available. Cases are not authority for propositions not considered therein. (*People v. Mazurette* (2001) 24 Cal.4th 789, 797 [102 Cal.Rptr.2d 555, 14 P.3d 227]; *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 198 [96 Cal.Rptr.2d 463, 999 P.2d 686].)

charging a person with a public offense." (§ 889.) Thus, it, like an information, is an " 'accusatory pleading' " (§ 691, subd. (c)), and it is the first pleading filed on the part of the People in superior court in a felony case (§ 949). It is the indictment which initiates the prosecution (see *People v. Sirhan* (1972) 7 Cal.3d 710, 746-747 [102 Cal.Rptr. 385, 497 P.2d 1121], overruled on other grounds in *Hawkins v. Superior Court* (1978) 22 Cal.3d 584, 593, fn. 7 [150 Cal.Rptr. 435, 586 P.2d 916]); prior to its filing, there is no case. There is, at most, simply an investigation which may or may not already have resulted in the defendant's arrest and which may not ultimately result in an indictment—a charge—being brought. (See *Cummiskey v. Superior Court* (1992) 3 Cal.4th 1018, 1026 [13 Cal.Rptr.2d 551, 839 P.2d 1059] [grand jury is part of charging, not adjudicative, process]; *People v. Brown* (1999) 75 Cal.App.4th 916, 931-932 [89 Cal.Rptr.2d 589] [grand jury process is investigatory]; § 924 [grand juror not to disclose fact of indictment until defendant's arrest].) It would be unreasonable to interpret section 190.9, subdivision (a) as requiring the reporting and transcription of an entire investigation.

The fact that subdivision (a)(1) of section 190.9 refers to the reporting and transcription of proceedings held prior to a preliminary hearing does not affect its applicability to prosecutions initiated by way of grand jury indictment. An indictment charging a felony is filed directly in superior court. (*People v. Martinez* (2000) 22 Cal.4th 750, 758 [94 Cal.Rptr.2d 381, 996 P.2d 32].) It does not contain allegations made by the prosecutor, but rather by the grand jury, albeit with the prosecutor's assistance. (*People v. Superior Court (Gevorgyan)* (2001) 91 Cal.App.4th 602, 612 [110 Cal.Rptr.2d 668].) The procedure involving prosecution by means of information is significantly different. An information "shall be in the name of the people of the State of California and subscribed by the district attorney." (§ 739; *People v. Superior Court (Gevorgyan)*, *supra*, 91 Cal.App.4th at p. 612.) Before an information can even be filed in superior court, there must be a preliminary hearing. (See § 860.) The entire process is initiated by a felony complaint (§ 806), which is "a written accusatory pleading subscribed under oath and filed with a magistrate." (*People v. Martinez, supra*, 22 Cal.4th at p. 758.) Thus, in causes prosecuted by information, a pre-information accusatory pleading is presented and adversarial proceedings undertaken before the information can be filed.

Although a grand jury proceeding may have the same purpose as a preliminary hearing—the weeding out of baseless criminal accusations (see *Cummiskey v. Superior Court, supra*, 3 Cal.4th at p. 1027; *People v. Brown, supra*, 75 Cal.App.4th at p. 931; *Nienhouse v. Superior Court* (1996) 42 Cal.App.4th 83, 91 [49 Cal.Rptr.2d 573])—the differences between the two

are substantial. It stands to reason, then, that the rights and protections afforded the accused party in the two proceedings are also different. For example, since the purpose of the right to counsel is "to protect the accused during trial-type confrontations with the prosecutor," that right attaches " 'at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' " (*United States v. Gouveia* (1984) 467 U.S. 180, 188, 190 [104 S.Ct. 2292, 2297, 2298, 81 L.Ed.2d 146].) Thus, an accused has the right to counsel at a preliminary hearing (*id.* at p. 188 [104 S.Ct. at pp. 2297-2298]; *People v. Slayton* (2001) 26 Cal.4th 1076, 1079 [112 Cal.Rptr.2d 561, 32 P.3d 1073]; *People v. Duncan* (2000) 78 Cal.App.4th 765, 773 [93 Cal.Rptr.2d 173]), but does not enjoy such a right in grand jury proceedings (*People v. Brown, supra,* 75 Cal.App.4th at p. 932). In addition, at a preliminary hearing the accused has the right personally to appear, to cross-examine witnesses, to present exculpatory evidence, and to exclude illegally obtained evidence. (*Press-Enterprise Co. v. Superior Court* (1986) 478 U.S. 1, 12 [106 S.Ct. 2735, 2742, 92 L.Ed.2d 1]; *Jennings v. Superior Court* (1967) 66 Cal.2d 867, 871 [59 Cal.Rptr. 440, 428 P.2d 304]; *People v. Duncan, supra,* 78 Cal.App.4th at p. 775; *Nienhouse v. Superior Court, supra,* 42 Cal.App.4th at p. 91.) Such rights are not available to the accused in a grand jury proceeding, although the prosecutor is required to inform the grand jury of any exculpatory evidence of which he or she is aware. (E.g., §§ 939.7, 939.71; *People v. Dupree* (1957) 156 Cal.App.2d 60, 64-65 [319 P.2d 39]; see *United States v. Williams* (1992) 504 U.S. 36, 49-53 [112 S.Ct. 1735, 1743-1745, 118 L.Ed.2d 352].)

The various protections California has built into its grand jury proceedings have not "transformed the grand jury proceeding from one that is investigatory to one that is adjudicatory." (*People v. Brown, supra,* 75 Cal.App.4th at p. 931.) In my view, section 190.9 refers to adjudicatory proceedings.

The majority seem to find the prosecutor's reasoning and comments in this case to be indicative of some sort of blameworthy intent. I cannot agree. Indeed, as the prosecutor suggested, *Mouchaourab* does *not* hold that every portion of a grand jury proceeding *must* be reported and transcribed. Although the prosecutor's explanation for, and argument concerning, his exclusion of the court reporter from opening statement and closing argument may indicate his office might wish to reexamine its practice in this regard, those comments do not suggest the lack of an innocent reason for the exclusion. I find the majority's conclusion, that the prosecutor acted for the express purpose of precluding discovery by defendant of the statements at issue, unwarranted.

Because I conclude that defendant did not have an absolute right to a transcript of the entire proceeding before the grand jury, I would not dismiss

the indictment in this case. Assuming an accused's access to a transcription of testimonial portions of a grand jury proceeding implicates the right to due process (since he or she has a due process right not to be indicted absent probable cause), any right to a transcription of other portions of the proceeding is not constitutionally based and, hence, is subject to harmless-error analysis under *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].

Even where section 190.9 is involved, "[n]o presumption of prejudice arises from the absence of materials from the appellate record [citation], and defendant bears the burden of demonstrating that the record is inadequate to permit meaningful appellate review [citations]." (*People v. Samayoa* (1997) 15 Cal.4th 795, 820 [64 Cal.Rptr.2d 400, 938 P.2d 2].) *Samayoa* involved a posttrial appeal, not a pretrial challenge. The majority analogize the situation in the present case—which does involve a pretrial challenge—to violation of a substantial right at a preliminary hearing, which entitles the defendant to dismissal of the information on timely motion. (*People v. Pompa-Ortiz* (1980) 27 Cal.3d 519, 523 [165 Cal.Rptr. 851, 612 P.2d 941] (*Pompa-Ortiz*).)

In *Pompa-Ortiz*, the California Supreme Court held that relief could be obtained without a showing of prejudice only in case of a pretrial challenge to irregularities in the preliminary hearing. (*Pompa-Ortiz, supra,* 27 Cal.3d at p. 529.) This rule has since been extended to grand jury proceedings. (*People v. Towler* (1982) 31 Cal.3d 105, 123 [181 Cal.Rptr. 391, 641 P.2d 1253]; *People v. Laney* (1981) 115 Cal.App.3d 508, 513 [171 Cal.Rptr. 493].) For the *Pompa-Ortiz* rule to apply, however, the accused must have been denied a *substantial right* during the course of the proceeding. Some irregularity or minor error is not enough. (See *Jennings v. Superior Court, supra,* 66 Cal.2d at p. 874.)

In terms of a preliminary hearing, "[s]ubstantial rights within the meaning of section 995 have been held to include the right to counsel, cross-examination and the presentation of an affirmative defense at the preliminary hearing, and substantial procedural rights such as the statutory right to complete the hearing in one session and to have a closed hearing. [Citations.]" (*People v. Pennington* (1991) 228 Cal.App.3d 959, 964 [279 Cal.Rptr. 85]; see *Pompa-Ortiz, supra,* 27 Cal.3d at p. 523; *Jennings v. Superior Court, supra,* 66 Cal.2d at pp. 874-875.) Given the statutory requirements (§§ 938, 938.1) and constitutional implications, denial of a transcript of a portion of grand jury *testimony* would, presumably, constitute denial of a substantial right. In my view, the same cannot be said about denial of a transcription of other portions of the proceedings. Accordingly, the *Pompa-Ortiz* rule does not apply and prejudice must be shown in order to obtain relief, even in case of a pretrial challenge.

Defendant has not established prejudice as he has not shown the record is inadequate to permit meaningful review. (See *People v. Samayoa, supra,* 15 Cal.4th at p. 820.) The record is sufficient to permit review of the grand jury's probable cause determination and, in my view, of that body's independence and impartiality. Although I can envision situations in which an accused might be prejudiced by the unavailability of a transcript of nontestimonial portions of the proceeding, this is not such a case. Where a prosecutor makes a straightforward presentation on the record, I am not willing to assume—especially where, as here, the evidence overwhelmingly establishes probable cause—that he or she waited until the court reporter was absent and then did something to compromise the grand jury's independence or impartiality.

I would deny the petition.

On August 8, 2002, the opinion was modified to read as printed above. The petition of real party in interest for review by the Supreme Court was denied September 25, 2002. Baxter, J., did not participate therein. Chin, J., and Brown, J., were of the opinion that the petition should be granted.